IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                              *

ANN NWAFOR,
                              *

    Plaintiff,
                              *

v.                                CIVIL NO.: WDQ-04-3936
                              *

THE INSTITUTE OF FAMILY
CENTERED SERVICES, et al.,     *

    Defendants.                *

*     *     *     *     *     *     *     *     *     *     *     *     *

Memorandum Opinion

    Ann Nwafor sued the Institute for Family Centered Services

("IFCS") and Darlene Dockins for wrongful discharge, intentional

infliction of emotional distress, breach of contract, and

employment discrimination in violation of state law and Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

Pending is IFCS's motion for summary judgment.  For the following

reasons, IFCS's motion will be granted.


I.  Background

    IFCS, a for-profit provider of family counseling services,

hired Nwafor as a Regional Director in April 2003.  Am. Compl. ¶

12.  In August 2003, Nwafor informed her immediate supervisor,

Darlene Dockins, that she was pregnant.  *Id* at ¶ 13.  Nwafor

alleges that as a result of her pregnancy, Dockins repeatedly

subjected her to verbal harassment and pressured her to resign.

1

*Id* at ¶¶ 15-16.

On January 5, 2004 Dockins ordered Nwafor to leave the office after a heated telephone conversation.  Am. Compl. ¶ 17.  When Nwafor refused, Dockins had the police escort Nwafor from the premises.  *Id* at 19.  On January 7, 2004, IFCS informed Nwafor that she had been terminated effective January 2.  *Id* at ¶ 21.


II.  Analysis

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party

opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the opposing party must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.


A.  Wrongful Discharge

In Count I of the Amended Complaint, Nwafor alleges she was wrongfully discharged because of her pregnancy in violation of the Maryland's Equal Protection Clause.  Defendants argue that the tort of wrongful discharge is unavailable when there is a statutory remedy.

Maryland law provides a cause of action for wrongful discharge when an at-will employee's termination contravenes a clear mandate of public policy.  *Szaller v. American National Red Cross,* 293 F.3d 148, 150 (4th Cir. 2002); *Owen v. Carpenter's District Council,* 161 F.3d 767 (4th Cir. 1998); *Thompson v. Memorial Hospital At Easton, Maryland,* 925 F.Supp. 400 (D.Md. 1996); *Adler v. American Standard Corporation,* 291 Md. 31 (1981). This doctrine constitutes a narrow exception to the general rule that an at-will employee may be discharged for any reason.  *Id.*

In determining what constitutes "public policy," Maryland courts require an "unambiguous, and particularized pronouncement"

so that "public policy...[is] not a matter of conjecture or interpretation." *Szaller,* 292 F.3d at 151 (*quoting Porterfield v. Mascari II, Inc.,* 142 Md.App. 134 (2002)).  As a result, Maryland courts have allowed actions for wrongful discharge only when an employee has been fired for exercising a specific legal right or refused to violate the law. *Szaller,* 292 F.3d at 152.

The doctrine is further limited to remedying "only those discharges...which otherwise would not be vindicated by a civil remedy." *Owen*, 161 F.3d at 774; *Makovi v. Sherwin-Williams Co.,* 316 Md. 603, 626 (Md. 1989).  Therefore, in cases of alleged employment discrimination actionable under Title VII, a claim for wrongful discharge is not available. *Lewis v. Forest Pharmaceuticals,* 217 F.Supp.2d 638, 656 (D.Md. 2002); *Thomas v. Maycock,* 1993 WL 278556, slip op. (D.Md. 1993); *Makovi,* 316 Md. at 626.

As Nwafor's claim is actionable under Title VII, her claim for wrongful discharge cannot be sustained.  Accordingly, Defendant's motion for summary judgment as to Count I will be granted.


B.  Intentional Infliction of Emotional Distress

In Count II of her Amended Complaint, Nwafor alleges that Defendants' decision to have the police escort her from the IFCS office constituted the intentional infliction of emotional

distress.  Defendants argue that their conduct was neither extreme nor outrageous and, therefore, Nwafor's claim for emotional distress must fail.

Under Maryland law, an action for intentional infliction of emotional distress requires a showing of: 1) intentional conduct; 2) that was extreme and outrageous; 3) a causal connection between the conduct and the emotional distress; and 4) severe emotional distress.  *Gantt v. Security, USA,* 356 F.3d 547, 553(4th Cir. 2004); *Demby v. Preston Trucking Co.,* 961 F.Supp. 873 (D.Md. 1997); *Caldor v. Bowen,* 330 Md. 632 (1993); *Harris v. Jones,* 281 Md. 560 (1977).

The tort is to be used only for "opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken National Management Company v. Weathersby,* 326 Md. 663, 670 (1992).  Therefore, "extreme and outrageous" conduct is only that which exceeds "all possible bounds of decency, and [can] be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Nwafor does not dispute that Dockins ordered her to leave the office, that she refused to do so, and that she was warned that the police would be called as a result.  Nwafor does not allege that she was handcuffed or that the police used force to remove from the building.  Although Nwafor was seven months pregnant at the time of the incident, the use of the police to

remove her from the IFCS building was neither extreme nor
outrageous.  Accordingly, Defendants' motion for summary judgment
as to Count II of the Complaint will be granted.


C.  Breach of Contract

    In Count III of the Complaint, Nwafor alleges that IFCS'
breached her employment contract by: 1) discharging her because
of her pregnancy, gender, and national origin; and 2) discharging
her without initiating mediation or arbitration.

    IFCS' employee handbook prohibits practices that "result in
illegal or unprofessional actions" including "consideration of
race, handicap, age, gender, sexual preference, religion, or
national origin in hiring, promotion or training."  2002 Employee
Handbook, p. 3.  The handbook also provides that "team members
will seek arbitration or mediation when conflicts with colleagues
require resolution for compelling professional reasons."  *Id* at
p. 4.

    Under Maryland law, provisions of an employee handbook that
limit an employer's discretion to terminate an at-will employee,
or set forth a required procedure for termination, may become a
contractual obligation if properly expressed and communicated to
an employee.  *Dahl v. Brunswick,* 277 Md. 471 (1976); *Samuels v.
Tschechtelin*, 135 Md.App. 483 (2000); *University of Baltimore v.
Iz*, 123 Md.App. 135 (1998); *Staggs v. Blue Cross of Maryland,* 61

Md.App. 381 (1985).  However, not every statement in a personnel handbook is contractually enforceable.  *Staggs,* 61 Md.App. at 392.  "General statements of policy are no more than that and do not meet the contractual requirements for an offer."  *Id.*

IFCS's policy prohibiting consideration of race, gender and national origin in hiring and promotion does no more than articulate a general policy that mirrors state and federal law. As it does not enumerate specific procedures for dismissal of an employee or change the status of at-will IFCS employees, this policy provision does not rise to the level of a contractual requirement.  *See, e.g., Greely v. Clairol,* 883 F.2d 68, slip op. (4th Cir. 1989)(provisions in an employee manual that included a commitment to provide "equal opportunity and treatment for each employee" did not create an enforceable contractual provision).

Similarly, the provision in the employment manual providing for arbitration or mediation for employee conflicts does not limit IFCS's discretion to terminate its employees.  The mediation provision makes no reference to termination of an employee nor does it clearly require mediation before discharge. Accordingly, this provision does not create an implied contractual requirement.

As neither provision of the employee handbook creates implied contractual provisions between IFCS and Nwafor, Defendant's motion for summary judgment will be granted as to

7

Count III.


D.  Gender Discrimination

In Counts IV and V of the Complaint Nwafor alleges that her firing when she became pregnant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[1]  Defendants argue that Nwafor has provided neither direct evidence of discriminatory discharge nor established a *prima facie* case under the *McDonnell Douglas* framework.


1.  Direct Evidence of Gender Discrimination

Nwafor can prove gender discrimination either with direct evidence of discriminatory intent or by offering circumstantial evidence under the *McDonnell Douglas* test.  *Oladokun v. Grafton School,* 182 F.Supp.2d 483, 490 (D.Md. 2002).

Derogatory remarks may constitute direct evidence of discrimination, however, such remarks cannot be stray or isolated and must be related to the employment decision in question. *Brinkley v. Harbour Recreation Club,* 180 F.3d 598 (4th Cir. 1999); *Fuller v. Phipps,* 67 F.3d 1137 (4th Cir. 1995); *Oladokun,* 182 F.Supp.2d at 490.  "There has to be a nexus between the offensive remark and Plaintiff's eventual termination for that

---

[1] As Count IV and V appear to be identical claims for employment discrimination under Title VII, they will be addressed together.

8

Case 1:04-cv-03936-WDQ   Document 49   Filed 12/20/05   Page 9 of 12

remark to comprise direct evidence of discriminatory discharge."
*Oladokun,* 182 F.Supp.2d at 490.

Although Nwafor has alleged that Dockins subjected her to
repeated derogatory remarks about her pregnancy, she has provided
evidence only of generally embarrassing or negative remarks.
*See, e.g.,* Nwafor Affidavit, p. 16-31 (Dockins allegedly
commented: "I wish you had waited a little bit [to become
pregnant]"; "You just got a new job...isn't that a bit much for
you?"; "Since you're having a girl, I hear in your culture boys
are really important to them.  And I hope we're not going to be
going through this [pregnancy] again").  As Nwafor has offered no
evidence of comments made directly linking her termination and
her pregnancy, Nwafor must prove her claim under the *McDonnell
Douglas* test.


2.  Circumstantial Evidence of Discriminatory Discharge

Under the framework established by *McDonnell Douglas Corp.
v. Green,* 411 U.S. 792 (1972), the plaintiff must first establish
a *prima facie* case of retaliation.  If the plaintiff can
establish a *prima facie* case, the employer must show a non-
retaliatory explanation for its actions.  *Id.*  If the employer
can show a legitimate reason for its actions, the plaintiff must
then show that the employer's explanation is pretextual.  *Id.*

To establish a prima facie case of pregnancy discrimination,

9

Nwafor must demonstrate that: 1) she was pregnant; 2) she suffered an adverse employment action; 3) she was performing her job satisfactorily; and 4) her position was filled by a similarly qualified applicant who was not pregnant. *Canavan v. Rita Ann Distributors*, 2005 WL 670777, Slip op. (D.Md. 2005); *Holmes v. e.spire Communications*, 135 F.Supp.2d 657 (D.Md. 2001); *Nilson v. Historic Inns Group Ltd.*, 903 F.Supp. 905 (D.Md. 1995).

It is undisputed that Nwafor was pregnant, was fired, and was replaced by a woman who was not pregnant.  Defendants argue, however, that Nwafor's refusal to leave the IFCS office, as directed, on January 5, 2004, constituted unsatisfactory job performance and, therefore, Nwafor cannot make a *prima facie* case of discriminatory discharge.

A clear act of insubordination leads to the conclusion that an employee is not performing her job satisfactorily.  *Mohamed v. Creative Hairdressers, Inc.*, 178 F.3d 1284, slip op. (4th Cir. 1999).  Nwafor does not dispute that she and Dockins argued on January 2, 2004 about Nwafor's dedication and ability to carry out her duties as Regional Director.  Nwafor Deposition, p. 248-251.  Nor does Nwafor dispute that this argument continued on the morning of January 5, 2004 when Nwafor refused to meet with Dockins unless a third person was present.  *Id* at p. 252-254.  It is undisputed that Dockins then ordered Nwafor to leave the IFCS office, Nwafor refused, and Dockins had the police remove Nwafor

from the building.  *Id* at p. 254-259.

As Nwafor refused her supervisor's request to meet in person (Dockins was working at her home-office) and then refused her request to leave the building, her behavior was clearly insubordinate and therefore cannot be considered satisfactory job performance.  Accordingly, Nwafor has not made a *prima facie* case for discriminatory discharge; therefore, Defendants' motion for summary judgment as to Counts IV and V will be granted.

E.  Discrimination on the Basis of Ethnicity

In Count VI of the Complaint, Nwafor alleges she was fired because Dockins believed that Nwafor would soon become pregnant again because she was expecting a daughter and, as a Nigerian, had a cultural preference for male children.

Nwafor's claim for discrimination on the basis of ethnicity, is also analyzed under the *McDonnell Douglas* framework. Therefore, to make out a *prima facie* case, Nwafor must prove that she was performing her job satisfactorily.

As noted above, Nwafor's insubordination undermines her claim of satisfactory job performance.  Accordingly, Nwafor has not established a *prima facie* case of ethnic discrimination; therefore, Defendants' motion for summary judgement as to Count VI will be granted.

F.  Violation of the Fair Employment Practices Act

In Count VIII of the Complaint Nwafor alleges that she was fired because of her gender and ethnicity in violation of the Maryland Fair Employment Practices Act (FEPA), Maryland Annotated Code, Art. 49B.  However, FEPA, does not provide a private right of action for employment discrimination.  *Bean v. United Parcel Service,* 2005 WL 1995442, slip op. (D.Md. 2005); *Willey v. Ward,* 197 F.Supp.2d 384 (D.Md. 2002); *Maryland Commission on Human Relations v. Downey*, 110 Md.App. 493 (Md. Ct. Spec. App. 1996). Accordingly, Defendants' motion for summary judgment on Count VIII will be granted.


III.  Conclusion

For the reasons stated above, judgment will be entered for the Defendants.


December 20, 2005                      _____/s/_____
Date                                  William D. Quarles, Jr.
                                      United States District Judge